Argued and submitted January 5, 2012, on appeal and cross-appeal, reversed and remanded for recalculation of father's income, child support obligation, and cash medical support obligation consistent with this opinion May 22, 2013

Jennifer Rene McMURCHIE,
aka Jennifer Rene Henning,
*Petitioner-Appellant*
*Cross-Respondent,*
*and*
Donald Edward McMURCHIE, III,
*Respondent-Respondent*
*Cross-Appellant.*

Clackamas County Circuit Court
DR0209201; A146713

304 P3d 751

Ronald D. Thom, Judge.

Helen C. Tompkins argued the cause and filed the briefs for appellant-cross-respondent.

David Buck Shannon argued the cause and filed the brief for respondent-cross-appellant.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Mother appeals the trial court's supplemental judgment modifying child support; she asserts that the amount of child support the trial court ordered father to pay is too low. Father cross-appeals; he asserts that the amount is too high. Both parties contend that the trial court erred in calculating father's presumed income.[1] In addition, mother contends that, even if the trial court did not err in calculating father's presumed income, it erred in failing to consider father's other available resources—specifically, his portion of a $3.3 million lottery prize—when determining whether the presumed child support obligation based on father's presumed income was unjust or inappropriate.

For the reasons explained below, we conclude that the trial court erred in calculating father's presumed income. Therefore, we remand for the trial court to determine whether the presumed child support obligation based on father's properly calculated presumed income is unjust or inappropriate.

To provide necessary context for the parties' arguments on appeal, we begin by reviewing the statutes and rules that govern how a parent's child support obligation is to be calculated. ORS 25.275 establishes the statutory criteria for determining the amount of a child support award. ORS 25.275(1) provides, "The Division of Child Support of the Department of Justice shall establish by rule a formula for determining child support awards in any judicial or administrative proceeding." The subsection further provides that, "[i]n establishing the formula, the division shall take into consideration" certain criteria, including "[a]ll earnings, income and resources of each parent," ORS 25.275(1)(a), and "[t]he earnings history and potential of each parent[,]" ORS 25.275(1)(b). In addition, ORS 25.275(2)(a) provides that the formula must comply with certain policies, including that "[t]he child is entitled to benefit from the income of both parents to the same extent that the child would have benefited had the family unit remained intact or if there had been an intact family unit consisting of both parents and

---

[1] Throughout this opinion, we use the term "presumed income" to refer to a parent's actual or potential income, as calculated according to OAR 137-050-0715.

the child." ORS 25.280 provides that "the amount of support determined by the formula established under ORS 25.275 is presumed to be the correct amount of the obligation," but that presumption "is a rebuttable presumption and a written finding or specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case is sufficient to rebut the presumption." "[C]riteria [that] shall be considered in making the finding" include:

"(1)   Evidence of the other available resources of a parent;

"(2)   The reasonable necessities of a parent;

"(3)   The net income of a parent remaining after withholdings required by law or as a condition of employment;

"(4)   A parent's ability to borrow;

"* * * * *

"(10)   The financial advantage afforded a parent's household by the income of a spouse or another person with whom the parent lives in a relationship similar to husband and wife."

ORS 25.280.

As directed by ORS 25.275(1), the Division of Child Support (the division) has established a formula for determining child support awards. The formula is set out in the Oregon Child Support Guidelines (the guidelines), OAR 137-050-0700 to 137-050-0765. As relevant here, the formula has three basic steps. OAR 137-050-0710. The first step is to determine the parents' presumed incomes. OAR 137-050-0710(4), (5); OAR 137-050-0715; OAR 137-050-0720. The second step is to use the parents' presumed incomes to determine their presumed support obligations. OAR 137-050-0710(6), (7); OAR 137-055-0025. The third step is to determine if the presumed support obligations are unjust or inappropriate. OAR 137-050-0710(15); OAR 137-050-0760. In accordance with ORS 25.280, the guidelines identify several "rebuttal factors" relevant to whether a parent's presumed support obligation is unjust or inappropriate, including "[e]vidence of the other available resources of the parent[.]" OAR 137-050-0760(1)(a). "The rebuttal factors may

be applied by adjusting the income of a parent, the costs for the child or the presumed support amount." OAR 137-050-0760(1).

With those statutes and rules in mind, we turn to the facts of this case. In 2002, mother and father divorced, and the trial court ordered father to pay child support in the amount of $1,057 per month and to provide health insurance for the parties' two children, who were born in 1989 and 1996.

In 2006, father filed a written request with the division, asking that his child support obligation be reviewed and modified. *See* ORS 25.287 (providing for periodic reviews of child support obligations and for reviews based on substantial changes in circumstances). The division prepared an administrative order reducing father's support obligation to $497 per month, and the trial court entered the order.

Both mother and father remarried. In March 2008, father's current wife won the Oregon Lottery, claiming a prize of $3.3 million. Father's wife purchased the winning lottery ticket with marital funds, and she and father shared the winnings. After paying federal and state taxes, they deposited the remaining winnings into joint accounts. They used some of the winnings to buy a house and to make large cash gifts to family and friends. They also used some of the winnings to pay father's debts, including past due child support and interest on that past due amount.

Thereafter, father and his wife placed most of the remaining winnings in investment accounts, held in both their names. Their investments, which primarily consist of municipal bonds, generate approximately $40,000 in interest each year. Father and his wife pay their living expenses with that interest, as neither works. Father has been unemployed since 2001 and has been convicted of several felonies. Thus, the trial court found that father was "virtually unemployable in his former field," computer network administration.

In December 2008, the division filed a motion in the Clackamas County Circuit Court to set aside the 2006

administrative order—which, as noted, had reduced father's monthly child support obligation from $1,057 to $497—on the ground that it was void because it had been entered without knowledge of the 2002 order. ORS 416.415. The trial court granted the motion.[2] Two months later, in February 2009, mother requested a new child support order and asked that any award be retroactive to the date of her request. She also requested cash medical support beginning that date. Mother's request related only to the parties' younger son; their older son was no longer a minor.

In May 2009, the division issued a Notice and Finding of Financial Responsibility proposing that father pay $277 per month in child support. ORS 416.415(1). Mother objected to the proposed support amount and requested a hearing. ORS 416.415(2)(g)-(h), (6).

On January 8, 2010, an administrative law judge (ALJ) conducted a hearing, and, on January 25, the ALJ issued an order awarding mother $1,245 per month in child support and $586 per month in cash medical support. Because father was unemployed but benefited from the use of the lottery winnings, the ALJ calculated father's presumed income as the amount of lottery winnings and investment income therefrom that had been spent on father's behalf.[3]

---

[2] It is unclear why the division filed the motion to set aside the 2006 order. The affidavit in support of the motion states,

"An administrative order establishing support between the parties and accompanying child support award and money award were filed with the court on 11/28/2006 without knowledge of the prior Stipulated Judgment of Dissolution of Marriage. Due to the entry of the State's Motion for Modification and Proposed/Final Order, the administrator lacked jurisdiction to enter the support order under ORS 416.415."

The 2006 order expressly modified the 2002 support order, however, so it is not clear why the division or the trial court believed, in 2008, that the 2006 order had been entered erroneously.

After the trial court granted the division's motion to set aside the 2006 order, it appears that the status of father's child support obligation was unclear to the parties. Mother testified that she believed that father's obligation had been erroneously terminated after father paid the past due child support with the lottery winnings and she executed a satisfaction of judgment for the past due amount.

[3] The ALJ determined the amount of lottery winnings that had been spent for father's benefit by adding (1) the amount of the winnings spent on father's individual expenses (specifically, his debts) and (2) one-half of the winnings spent on

After the ALJ's order, father deeded to his wife his interest in their home and transferred assets from their joint accounts to accounts held only by her. He later testified that he took those actions to protect his assets from "creditors," including mother.

Father appealed the ALJ's order to the trial court, which conducted a hearing on July 14, 2010. In the trial court, the parties stipulated that mother's monthly income was $2,194. But, they disagreed about how the court should calculate father's income. At the beginning of the hearing, mother argued that, because father was unemployed, but employable, the court should attribute an employment income to him, as well as a portion of the lottery winnings. Specifically, mother's attorney argued:

"[Father] is fully capable of working. He chooses not to, and he doesn't need to, but even the latter, I think that the representations by [father] that his wife won the lottery; therefore, he doesn't have any income from it is specious and is inconsistent with the facts. It is household income for the two of them. * * * [A]ssets * * * were put in both names until the child support became an issue.

"So I think the decision of the administrative law judge was appropriate in this case, and I don't think there is any reason to deviate from that or to go below with regard to [father's] income."

Mother's attorney further argued that, to determine the amount of lottery winnings to include in father's income, the court should rely on the amount of winnings that had been spent on father's behalf, as the ALJ did. Mother's attorney suggested the following calculation:

"[Look at] what he spent in 2009. That is after all the initial gifts to friends and relatives were made, after they had some time to settle down, as far as that is concerned. They still spent $387,000. I think that is the appropriate

father's shared expenses (including gifts made to his family, travel expenses, and property taxes).

figure, plus the appropriate amount, percentage of tax on those net proceeds.[4]

"Take that figure and divide it by two, and I think that is the appropriate amount for [father], because these lottery winnings * * * are their joint marital income for both of them. Therefore, I think it is reasonable to take that amount, plus the appropriate amount of taxes that go with it, divide it by two, to reach his income and cash medical support * * *[.]"

Father responded that the only income that the trial court should attribute to him was either the amount he would earn if he worked a full-time minimum-wage job or one-half of the $40,000 in interest that he and his wife earned on the invested lottery winnings. His attorney argued:

"The core issue is that [father], who lost any earned income in 2000 when he worked in the computer field, subsequently ran into some hard times, was convicted of a series of felonies and now does not have current qualifications. And by virtue of his outdated qualifications, his not having worked in ten years and his criminal felony convictions, he is simply not employable. * * *

"To the extent that's true, he can be attributed a minimum wage at 40 hours a week[.]

"* * * [H]is wife did win the lottery in 2008. We will show how those funds were allocated and that they generate about $40,000 a year as income for [father's wife]. If this Court finds that the income from those lottery winnings, from [his wife's] lottery earnings should be attributed to father, then half of that income is about $20,000 a year. It is about the same amount that would be attributed to him under the OARs as his potential income [from a full-time, minimum-wage job].

"So in either case—and the OARs are clear: That's an either/or analysis. You either attribute to him the minimum wage earnings, or if you call his wife's—the dividends from his lottery winnings earnings, then those substitute for his potential earnings, and that number is about $20,000 a

---

[4] Mother's position was that father's income should include "a portion of the taxes that were paid" on the lottery winnings because "the guidelines do not go off after tax income. They go off gross income."

year * * *[.] So under either analysis, [father's] income ends up being about $20,000 a year."

After taking the matter under advisement, the trial court issued a letter opinion, in which it calculated father's presumed income by adding (1) the amount father would earn annually if he worked a full-time minimum-wage job and (2) one-half of the annual interest father and his wife earned on the lottery winnings that they invested in municipal bonds. The court did not include any of the lottery principal in father's income. The court explained:

"The lottery winnings are no longer considered income because [father] obtained those funds in 2008. [Mother] argues that any lottery winnings withdrawn from [father and his wife's] accounts for [father's] benefit constitute a gift at the time of the withdrawal and must be included as income when determining child support.

"Based on the information presented, I conclude that [father's] use of the lottery winnings is not considered income when determining [father's] child support obligations. [Father] received that money outside of the period of time relevant for current child support calculations. The winnings could have been a gift when they were originally placed into the joint account, but [father's] ongoing use of that money cannot be seen as a continuing gift that accrues every time he withdraws funds."

Based on its calculation of father's presumed income and its determination that there was no reason to rebut the presumed support amount, the court awarded mother $476 per month in child support and $125 per month in cash medical support.

On appeal, mother asks us to review the trial court's decision *de novo* pursuant to ORS 19.415(3)(b) and urges us to reinstate the ALJ's award. She makes two alternative arguments. First, she argues that the trial court erred in calculating father's presumed income. According to mother, the trial court should have calculated father's presumed income based on the lottery funds spent on his behalf, as the ALJ did. Second, she argues that, even if the trial court correctly calculated father's presumed income, we should consider the following facts as rebuttal factors under ORS 25.280(1): father's access to lottery winnings, his history

of child support arrearages, and his admission to the trial court that he moved assets to avoid paying child support obligations.

Father cross-appeals, arguing that the trial court erred when it added his actual and potential income to calculate his presumed income. According to father, the statute permits a court to use one figure or the other, but not both.

We decline mother's invitation to review the trial court's decision *de novo* and instead review for legal error. *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases.").

We first address whether the trial court correctly calculated father's presumed income under the guidelines. We review the trial court's interpretation of the guidelines for legal error. *Malpass and Malpass*, 255 Or App 233, 234, 296 P3d 653 (2013); *Bock and Bock*, 249 Or App 241, 242, 275 P3d 1006 (2012).

The guidelines define "income"; they also distinguish between "actual income" and "potential income" and specify when a parent's income is presumed to be the parent's "actual income" and when it is presumed to be the parent's "potential income." Specifically, OAR 137-050-0715 provides, in part:

"(1) *'Income' means the actual or potential gross income of a parent, as determined in this rule.*

"(2) *'Actual income'* means all earnings and income from any source, except as provided in section (4). Actual income includes but is not limited to:

"(a) Employment-related income including salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, and honoraria;

"(b) Return on capital, such as interest, trust income and annuities;

"(c)   Income replacement benefit payments including Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits;

"(d)   Gifts and prizes, including lottery winnings;

"(e)   Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation * * *; and

"(f)   Expense reimbursements or in kind payments received by a parent in the course of employment, self employment, or operation of a business are income to the extent they reduce personal living expenses.

"* * * * *

"(4)   Child support, adoption assistance, guardianship assistance, and foster care subsidies are not considered income for purposes of this calculation.

"(5)   'Potential income' means the greater of:

"(a)   The parent's probable full-time earnings level based on employment potential, relevant work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community; or

"(b)   The amount of income a parent could earn working full-time at the current state minimum wage.

"(6)   Income is presumed to be the amount determined as potential income in the following scenarios:

"(a)   An unemployed parent;

"(b)   A parent employed on less than a full-time basis;

"(c)   A parent with income less than Oregon minimum wage for full-time employment; or

"(d)   A parent with no direct evidence of any income.

"(7)   Income is presumed to be the parent's actual income in the following scenarios:

"(a)   A parent working full-time at or above the state minimum wage[;]

"(b)   A parent unable to work full-time due to a verified disability;

"(c)   A parent receiving workers' compensation benefits;

"(d)   An incarcerated obligor as defined in OAR 137-055-3300; or

"(e)   When performing a calculation for a temporary modification pursuant to ORS 416.425(13),[5] except as provided in section (9) of this rule.

"(8)   The presumptions in sections (6) and (7) of this rule may be rebutted by a finding that the presumption is inappropriate in light of the parent's probable full-time earnings level based on employment potential, relevant work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community."

(Emphases added.)

In support of his argument that the trial court erred by calculating his income based on his actual income *and* his potential income, father relies on OAR 137-050-0715(1), which, as set out above, defines "income" as "the actual *or* potential gross income of the parent, as determined in this rule." (Emphasis added.) Father argues that, as defined by OAR 137-050-0715(1), a parent's income must therefore be *either* the parent's actual income *or* the parent's potential income; according to father, it cannot be a combination of the two.

When interpreting a rule, we begin by examining its text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *In re Marriage of Perlenfein and Perlenfein*, 316 Or 16, 20, 848 P2d 604 (1993). The relevant text is the definition of "income" and, in particular, the definition's use of the term "or." As the Supreme Court recently explained, "or," while always disjunctive, may have "either an 'inclusive' or an 'exclusive' sense. Thus, 'A or B' can mean one or the

---

[5] Under ORS 416.425(13), whenever support enforcement services are being provided under ORS 25.280, the administrator may move to suspend the order or judgment and issue a temporary modification order when there is a period of significant unemployment in Oregon and a party to the support order or judgment experiences an employment-related change of income as defined by rule in ORS 416.455.

other, but not both. But it can also mean one or the other, or both." *Burke v. DLCD*, 352 Or 428, 435-36, 290 P3d 790 (2012). Whether the disjunctive "or" is inclusive or exclusive depends on context. *Id.* at 437.

> "If, for example, a person is told, 'If you obtain a passport, you may travel to England, France, or Germany,' that does not necessarily mean that he or she may travel to only one of those destinations. Or, * * * if a person is asked whether she wishes 'cream or sugar' with her coffee, the request does not necessarily exclude the possibility of having both."

*Id.* at 436 (citing Bryan A. Garner, *Modern American Usage* 45 (2003)).

Here, the structure of OAR 137-050-0715, which prescribes how to calculate a parent's income for purposes of child support, persuades us that the "or" in OAR 137-050-0715(1) is exclusive. As set out above, under OAR 137-050-0715(6), a parent's income is *presumed to be his or her potential income* if the parent is unemployed, is employed on a less-than-full-time basis, has an income that is less than Oregon minimum wage for full-time employment, or lacks direct evidence of any income. Under OAR 137-050-0715(7), a parent's income is *presumed to be his or her actual income* if the parent is working full-time at or above the state minimum wage, is unable to work full-time due to a verified disability, is receiving workers' compensation benefits, or is incarcerated as defined in OAR 137-055-3300. Essentially, a parent's income is presumed to be the parent's potential income when the parent is capable of working full-time for at least minimum wage, but is not doing so, and a parent's income is presumed to be the parent's actual income in all other situations. Thus, OAR 137-050-0715 establishes a system within which a parent's presumed income is *either* the parent's actual income *or* the parent's potential income, not a combination of the two. In other words, when the guidelines define "income" as "the actual *or* potential gross income of a parent," OAR 137-050-0715(1) (emphasis added), the "or" is exclusive, not inclusive.

Admittedly, in cases like this one, OAR 137-050-0715's binary approach may result in "income" determinations that

do not accurately reflect the financial resources actually received by a parent. When a parent's income is presumed to be the parent's potential income, it is limited, by the definition of potential income, to either the parent's "probable full-time earnings" or the "amount of income [the] parent could earn working full-time at the current state minimum wage." OAR 137-050-0715(5). Thus, it does not include any financial resources that the parent actually receives in the form of, for example, bonuses, returns on capital, gifts, prizes, or rents, all of which are included in the presumed incomes of parents who work full-time at or above the minimum wage, as well as parents receiving workers' compensation benefits, parents who are incarcerated, and parents who are unable to work full-time due to a verified disability. OAR 137-050-0715(2), (7). However, as discussed below, those inaccuracies may be corrected through application of the rebuttal factors.

In this case, the trial court erred when it calculated father's presumed income based on both his actual income (from the interest earned on the invested lottery winnings) and his potential income (from a full-time, minimum-wage job). Because father was unemployed, his presumed income was his potential income. OAR 137-050-0715(6). Because, as the trial court found, father could no longer work as a network administrator, and there was no evidence that he could earn above the state minimum wage, his potential income was the amount that he could earn working full-time at a minimum-wage job. ORS 137-050-0715(5).

Thus, the trial court should have concluded that father's presumed income was what he could earn working full-time at minimum wage. If the court had done so, its next step would have been to determine whether the presumed child support obligation based on full-time, minimum-wage earnings would be unjust or inappropriate. OAR 137-050-0760(1); *see also* ORS 25.275; ORS 25.280. As mentioned, the guidelines identify several rebuttal factors relevant to whether a parent's presumed support obligation is unjust or inappropriate, including "[e]vidence of the other available resources of the parent[.]" OAR 137-050-0760(1)(a).

We remand because the trial court did not determine whether a child support obligation based on full-time, minimum-wage earnings would be unjust or inappropriate. Because they are likely to arise on remand, we address two additional issues. *See Cain and Gilbert*, 196 Or App 28, 32, 100 P3d 735 (2004) (addressing issues likely to arise on remand in a custody and child support case).

First, father's lottery winnings may be considered "other available resources" for the purposes of determining whether his presumed support obligation is unjust or inappropriate. OAR 137-050-0760(1)(a). The lottery winnings, or lottery principal, was income to father and his wife in 2008. No one would dispute that, if father had been employed in a position in 2008 that paid $3.3 million, that earned income would have been considered actual income for purposes of calculating child support. *See* OAR 137-050-0715(2)(a) (Actual income includes "[e]mployment-related income including salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, and honoraria[.]"). Moreover, if father had held a full-time job when his wife won the lottery, his presumed income would have been his "actual income," as defined by OAR 137-050-0715(2), and would have included the lottery winnings. OAR 137-050-0715(2)(d) (lottery winnings are part of actual income). It would be inappropriate if, simply because father was unemployed when his wife won the lottery, none of that money were characterized as father's resources. It would also contravene the statutory directives that child support obligations should reflect "[a]ll earnings, income and resources of each parent," ORS 25.275(1)(a), and that a child "is entitled to benefit from the income of both parents to the same extent that the child would have benefited had the family unit remained intact or if there had been an intact family unit consisting of both parents and the child," ORS 25.275(2)(a).

Furthermore, the lottery winnings may be considered "other available resources of the parent" under OAR 137-050-0760(1)(a) even though mother's request for a new child support order came 11 months after father and wife won the lottery. To hold otherwise would create an incentive for parents to spend, transfer, or hide lump

sums quickly in order to reduce their child support obligations. Such a perverse incentive would frustrate the statutory directives expressed in ORS 25.275(1)(a) and ORS 25.275(2)(a).

Moreover, a parent requesting child support or a modification of child support will virtually always discover a change in the obligor parent's financial circumstances *after* that change has occurred. The guidelines include "[g]ifts and prizes, including lottery winnings" in actual income, thus evidencing an intent to include all monetary resources—even one-time, unanticipated windfalls—in child support determinations. OAR 137-050-0715(2)(d). A request for support or a modification of support based on such resources will necessarily come after the resources have been received. When, as here, the parents are divorced and unable to agree on the amount of child support, the obligor parent is less likely to disclose facts that would cause that parent's support obligations to increase. That further increases the amount of time that is likely to transpire before the obligee parent discovers a beneficial change in the obligor parent's financial circumstances. There is uncontested evidence that mother requested a new child support order within two months of learning that the 2006 order had been set aside. Against that backdrop, mother did not unreasonably or improperly delay in seeking a support order. Therefore, the lottery winnings may be considered "other available resources" for the purpose of determining whether the presumed child support obligation is unjust or inappropriate. OAR 137-050-0760(1)(a).

Second, the interest on the lottery winnings may also be considered "other available resources of the parent." OAR 137-050-0760(1)(a). As the trial court implicitly recognized, the interest earned on the lottery winnings is income for father and his wife. They receive approximately $40,000 in interest annually, which they use to pay their living expenses. If father were employed full-time at or above the minimum wage, his child support obligation would be based on his actual income, which would include both his wages and the interest on the lottery winnings. OAR 137-050-0715(7)(a). There is no reason why father's half of the interest

may not be considered a rebuttal factor when calculating his child support obligation.

To summarize, we hold that the trial court erred in calculating father's presumed income, and we remand for the trial court to determine whether father's presumed support obligation based on that income is unjust or inappropriate in light of the rebuttal factors, including father's substantial monetary resources in the form of both the lottery winnings and the interest earned on those winnings. If the court concludes that the presumed support obligation is unjust or inappropriate, it may "adjust[] the income of a parent, the costs for the child[,] or the presumed support amount." OAR 137-050-0760(1).

On appeal and cross-appeal, reversed and remanded for recalculation of father's income, child support obligation, and cash medical support obligation consistent with this opinion.