Argued and submitted June 26, 2012, reversed and remanded for recalculation of mother's income and child support obligation October 9, 2013

In the Matter of the Marriage of

Barbara GILMORE,
*Petitioner-Respondent,*
*and*

Melvin AMBROSE,
*Respondent-Appellant.*

Washington County Circuit Court
C030893DRA; A149032

311 P3d 970

John D. Peterson and Peterson, Peterson & Walchli, LLP filed the brief for appellant.

Michael R. Sahagian argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Father in this dissolution case appeals a supplemental judgment modifying child support. ORS 107.135(1)(a). The trial court, in that judgment, ordered mother to pay child support in the amount of $327 per month. Father asserts that the trial court improperly failed to "impute income to mother in an amount consistent with that monthly income she voluntarily left." In particular, after losing custody of the parties' only child to father, mother retired from her job at age 56 and moved to Panama. The trial court calculated mother's child support obligation using mother's actual retirement income. In father's view, in calculating child support, the court improperly failed to utilize mother's potential income pursuant to OAR 137-050-0715 (7/1/10).[1] We agree with father and, therefore, reverse and remand.

On appeal, father requests that we exercise our discretion to review the trial court's decision *de novo*. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review on appeal in certain equitable actions); *Turner and Muller*, 237 Or App 192, 194-98, 238 P3d 1003 (2010), *rev den*, 350 Or 231 (2011) (exercising discretion to conduct *de novo* review in a domestic relations case). However, in our view, this is not an exceptional case justifying exercise of *de novo* review. *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Accordingly, we review the trial court's decision for legal error and "state the facts consistently with those found by the trial court to the extent that there is evidence to support them." *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012).

In 2003, mother filed a petition for dissolution of marriage, and the trial court entered a general judgment of dissolution in 2005. At that time, mother was awarded sole custody of the parties' child; father had parenting time and was ordered to pay child support. In 2008, father sought modification of the dissolution judgment, asserting that he

---

[1] Throughout this opinion, we cite the version of OAR 137-050-0715 that was certified effective July 1, 2010. Although the rule was amended in 2013, those amendments do not affect the resolution of this appeal.

should be awarded custody of child. The court appointed a custody evaluator and, in June 2009, entered a supplemental judgment awarding custody to father, subject to mother's parenting time.

In October 2010, father filed a motion to modify mother's parenting time. In an affidavit in support of the motion, father stated that he had received an e-mail from mother stating that she would be moving out of town on October 14, 2010, and that child had informed him that she and mother were moving to Panama. Mother's response confirmed that she had, indeed, moved to Panama without child. In January 2011, father filed a motion to modify the dissolution judgment to require mother to pay child support. Thereafter, the court entered a supplemental judgment modifying mother's parenting time and, in May 2011, held a hearing on the issue of child support.

At the hearing, mother testified that, because of an early retirement incentive offered by her employer, she had voluntarily retired from her job at Portland Community College (PCC) in August 2010 at the age of 56. She received $2,130 each month in public employee retirement (PERS) benefits; while teaching at PCC she had earned $6,450 each month. At the time mother elected to retire, child was 10 years old.

According to mother, she had decided to retire and move for "the emotional and the physical and the mental health of [child] after * * * father had been awarded custody" in view of the problematic relationship between mother and father and his wife:

> "[Child] was being really deeply affected by that, and I didn't feel—I didn't—I couldn't think of any other way to get her out of the middle than for * * * one of us to be farther away."

Mother further explained:

> "I weighed all the pros and cons, and I realized that if I were going to retire, knowing how little money I was going to get when I retired, and if I was going to move away to keep [child] out of all of this, that I had to move someplace where the cost of living was really low."

According to mother, she chose Panama primarily

"for the cost of living because of my reduced income. I didn't feel like I could afford to live anywhere in the United States that was—I don't know what the word is—desirable, I guess, to me, based on the amount of income that I was getting."

Mother also stated that she was not able to work in Panama.

Father, for his part, described child's special needs and discussed the medical expenses associated with those special needs. He stated that, among other things, child required tutoring, medication, and treatment by a psychologist for children with special needs. With respect to the child support that mother should be required to pay, father asserted that she could not "elect to retire with a ten-year-old, particularly a ten-year-old child with special needs, and expect that [her] child support is going to be established at an income level that is about 30 percent of what [she has] the capability of earning." He emphasized that mother was unemployed and had reduced income solely as the result of her own choices. According to father, child is "entitled to the full support of both of her parents" and, under the circumstances, the "child support guidelines require the use of potential income, and that potential is what she was earning at PCC."

Mother, in turn, argued that she "appropriately retired under the rules of PERS" and that there was "nothing wrong with what she did." She asserted that, "if you retire appropriately under the rules of where you're working, *** that ends the discussion." Also, as to potential income, mother contended that, because she now lives in Panama and cannot work there, there are "no real additional funds that she can make."

The court did not discuss mother's potential income, instead concluding that her income "for purposes of child support" is the $2,130 she actually receives in retirement benefits. The court reasoned:

"[T]he move to Panama is consistent with so many different steps along the way, all of which are not well considered, all which seem to ignore the overall consequences, all

which seem to be, in the Court's opinion, almost irrational. But are all consistent.

"* * * * *

"[I]n reality, she doesn't think like I think. She doesn't think like [father] thinks. * * * The reason she is in Panama is because she doesn't think the way we think. I couldn't imagine retiring at age 56. That's just—and just lay around all day long, I just can't imagine that. But that's not for me to judge, except to see whether it's totally inconsistent with all the other things I've seen along the way, and it isn't.

"And she's, in her way, created peace for the child, and created peace for [father] by being so far away. I mean, so removed that she can't cause you any problems. And she can't cause the child any problems. And while I don't want to reward non-bad behavior, or the absence of bad behavior by saying, 'Oh well, then you can do whatever you want to now because there's no bad behavior.' But by the same token, I have to see whether or not it is—it makes sense to me that this is the consequence of a bunch of tumble downs. And I think that it is."

The court subsequently entered a supplemental judgment ordering mother to pay child support in the amount of $327 per month. That amount was calculated based on mother's actual retirement income and father's income from employment. The court noted that father incurs health care costs for child "as well as additional expenses associated with [her] special needs" and that cash medical support was a component of the child support award.

On appeal from the judgment, father contends that the trial court erred when it calculated child support based on mother's actual income from retirement benefits rather than evaluating her potential income based on her monthly salary before her voluntary retirement. Mother responds that "[t]his case simply boils down to [the] very basic question" of whether a party who chooses "to retire at an age that is appropriate under the retirement guidelines of his or her employer" must "be held to a potential income standard as opposed to their retirement income." In mother's view, her "retirement income is her actual income, and no other income should be imputed to her if she appropriately retired."

The parties' arguments raise the issue of whether the trial court properly applied the child support guidelines in this case. When considering whether the trial court correctly calculated a party's income under the guidelines, we "review the trial court's interpretation of the guidelines for legal error." *McMurchie and McMurchie*, 256 Or App 712, 721, 304 P3d 751 (2013).

ORS 25.275(1) provides that "[t]he Division of Child Support of the Department of Justice shall establish by rule a formula for determining child support awards[.]" As directed in that statute, the division "has established a formula for determining child support awards. The formula is set out in the Oregon Child Support Guidelines (the guidelines), OAR 137-050-0070 to 137-050-0675." *McMurchie*, 256 Or App at 715. The guidelines formula "has three basic steps. The first step is to determine the parents' presumed incomes. The second step is to use the parents' presumed incomes to determine their presumed support obligations. The third step is to determine if the presumed support obligations are unjust or inappropriate." *Id.* (citations omitted).

Thus, to calculate a parent's child support obligation, the court must first determine the parent's income. "The guidelines define 'income'; they also distinguish between 'actual income' and 'potential income' and specify when a parent's income is presumed to be the parent's 'actual income' and when it is presumed to be the parent's 'potential income.'" *Id.* at 721.

Pursuant to OAR 137-050-0715,

"(1)  'Income' means the actual or potential gross income of a parent, as determined in this rule.

"(2)  'Actual income' means all earnings and income from any source, except provided in section (4).[2] Actual income includes but is not limited to:

"(a)  Employment-related income including salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, and honoraria;

---

[2] Under OAR 137-050-0715(4), "[c]hild support, adoption assistance, guardianship assistance, and foster care subsidies are not considered income for purposes of" calculating child support.

"(b)   Return on capital, such as interest, trust income and annuities;

"(c)   Income replacement benefit payments including Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits;

"(d)   Gifts and prizes, including lottery winnings;

"(e)   Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation * * *; and

"(f)   Expense reimbursement or in kind payments received by a parent in the course of employment, self-employment, or operation of a business are income to the extent they reduce personal living expenses.

"* * * * *

"(5)   'Potential income' means the greater of:

"(a)   The parent's probable full-time earnings level based on employment potential, relevant work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community; or

"(b)   The amount of income a parent could earn working full-time at the current state minimum wage."

A parent's income is presumed to be that parent's potential income

"in the following scenarios:

"(a)   An unemployed parent;

"(b)   A parent employed on less than a full-time basis;

"(c)   A parent with income less than Oregon minimum wage for full-time employment; or

"(d)   A parent with no direct evidence of any income."

OAR 137-050-0715(6). On the other hand, a parent's income is presumed to be actual income

"in the following scenarios:

"(a)   A parent working full-time at or above the state minimum wage;

"(b)   A parent unable to work full-time due to a verified disability;

"(c)   A parent receiving workers' compensation benefits;

"(d)   An incarcerated obligor as defined in OAR 137-055-3300; or

"(e)   When performing a calculation for temporary modification pursuant to ORS 416.425(13),[3] except as provided in section (9) of this rule."

OAR 137-050-0715(7). Pursuant to OAR 137-050-0715(8), the presumptions regarding actual and potential income "may be rebutted by a finding that the presumption is inappropriate in light of the parent's probable full-time earnings level based on employment potential, relevant work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community."

"[U]nder OAR 137-050-0715(6), a parent's income is *presumed to be his or her potential income* if the parent is unemployed, is employed on a less-than-full-time basis, has an income less than Oregon minimum wage for full-time employment, or lacks direct evidence of any income. Under OAR 137-050-0715(7), a parent's income is *presumed to be his or her actual income* if the parent is working full-time at or above the state minimum wage, is unable to work full-time due to a verified disability, is receiving workers' compensation benefits, or is incarcerated as defined is OAR 137-050-3300. Essentially, a parent's income is presumed to be the parent's potential income when the parent is capable of working full-time for at least minimum wage, but is not doing so, and a parent's income is presumed to be the parent's actual income in all other situations."

*McMurchie*, 256 Or App at 724 (emphasis in original); *see McCarthy and McCarthy*, 170 Or App 183, 192, 12 P3d 519 (2000) (the court "*must* consider potential income when a parent is employed less than full time" (emphasis in original)); *Harper and Harper*, 122 Or App 9, 13, 856 P2d 334, *rev den*, 318 Or 246 (1993), *cert den*, 511 US 1108 (1994) (the

---

[3] Under that statute, where support enforcement services are being provided pursuant to ORS 25.080, "the administrator may move to suspend the order or judgment and issue a temporary modification order" when there "is a period of significant unemployment" and a "party to the support order or judgment experiences an employment-related change of income as defined by rule in ORS 416.455."

court must base child support on potential income where a parent in unemployed or employed less than full time). Although those presumptions are rebuttable under OAR 137-050-0715(8), for the presumption to be rebutted, the court must make a finding that the presumption is not appropriate in light of what the parent would likely be able to earn if working full time. Furthermore, "[n]othing requires the court to find that the parent became [unemployed or] underemployed in bad faith" before it may utilize potential income in calculating child support. *Harper*, 122 Or App at 13.

Here, mother is unemployed. Therefore, under OAR 137-050-0715(6), her income is presumed to be her potential income (rather than her actual income). Mother's potential income (under the circumstances) is her probable full-time earnings based on, among other things, her relevant work history and occupational qualifications. As noted, there was evidence that mother had been employed as a teacher at PCC and that she earned $6,450 each month in that job. Furthermore, the evidence was that mother retired from her employment and moved out of the country voluntarily. She was offered an early retirement incentive that she chose to accept and she decided to move away because, in her view, it would be better for child's mental and emotional health. The court should have determined mother's potential income in this case.

We further reject mother's assertion that, where a parent retires in compliance with the terms of her retirement program, potential income should not be evaluated. Contrary to mother's framing of the issues, our resolution does not depend on an assessment of "what the appropriate retirement age is." A parent is free to make retirement choices as he or she sees fit, but the guidelines impose the burden of those choices on the retiring parent, not on the child and the other parent. The guidelines contemplate that a parent in mother's circumstances, who voluntarily reduces her earning by retiring early and moving out of the country, nonetheless retains an obligation to support her child based on her economic ability.

Moreover, contrary to the trial court's apparent understanding, bad faith is *not* required in order to justify using

potential income to calculate child support. Rather, under the guidelines, the income of a parent in mother's circumstances is presumptively that parent's potential income and, furthermore, the court may appropriately use evidence of a parent's past average income and occupational qualifications to determine that potential income. *See, e.g., Harper,* 122 Or App at 13. Finally, although the presumption that potential income is the parent's income for child support purposes may be rebutted, such a rebuttal requires a finding that use of the parent's potential income is inappropriate in view of economic circumstances that may affect the parent's earning ability.

Here, the trial court determined that mother did not act in bad faith when she voluntarily retired and moved and, based on that determination, used her actual income to calculate child support. In so doing, the court did not follow the steps required under the guidelines. In particular, the court did not determine mother's presumed income (that is, her potential income) and calculate child support based on that, nor did the court make any finding that the presumption regarding presumed income had been rebutted. Accordingly, we must reverse and remand for the court to calculate child support as required under the guidelines.

Reversed and remanded for recalculation of mother's income and child support obligation.