Argued and submitted November 23, 2010, judgment reversed and remanded
for recalculation of child support April 20, 2011

In the Matter of the Marriage of

Louis Tim MATHEWS,
*Petitioner-Appellant,*

*and*

Kathleen Caroline MATHEWS,
nka Kathleen Caroline Saldana,
*Respondent-Respondent,*

*and*

Kayleen Ellen MATHEWS,
*Respondent.*

STATE OF OREGON,
*Petitioner-Respondent,*

*v.*

Louis Tim MATHEWS,
*Respondent-Appellant.*

Malheur County Circuit Court
950927571E; A142143

255 P3d 607

George W. Kelly argued the cause and filed the brief for
appellant.

Max S. Taggart argued the cause and filed the brief for respondent Kathleen Caroline Mathews.

Denise G. Fjordbeck waived appearance for respondent State of Oregon.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

This is a proceeding under ORS 25.287[1] for the modification of a child support award. Father appeals from a supplemental judgment increasing his monthly child support obligation for the parties' two children from $300 to $1,319, seeking a reduction in the award. On *de novo* review, *Grile and Grile*, 138 Or App 630, 909 P2d 1248 (1996), ORS 19.415(3) (2007), we reverse and remand for a recalculation of child support.[2]

The parties were divorced in 1996. They have two children. At the time of dissolution, father was ordered to pay child support of $200 per month. In 2000, that amount was administratively increased to $300 per month pursuant to ORS 25.287. The record shows that father has been in

---

[1] ORS 25.287 provides, in part:

"(1)(a) The entity providing support enforcement services under ORS 25.080 may initiate proceedings to modify a support obligation to ensure that the support obligation is in accordance with the formula established under ORS 25.275.

"* * * * *

"(d) The only issues at proceedings under this section are whether three years have elapsed, or such shorter cycle as determined by rule of the department, and whether the support obligation is in substantial compliance with the formula established under ORS 25.275.

"(e) Upon review, if the administrator determines that a support obligation does not qualify for a modification under this section, a party may object to the determination within 30 days after the date of the determination. A hearing on the objection shall be conducted by an administrative law judge assigned from the Office of Administrative Hearings. Appeal of an order of the administrative law judge may be taken to the circuit court of the county in which the support obligation has been entered or registered for a hearing de novo. The appeal to the court shall be by petition for review filed within 60 days after entry of the order of the administrative law judge.

"(f) If the court, the administrator or the administrative law judge finds that more than three years have elapsed, or such shorter cycle as determined by rule of the department, the court, the administrator or the administrative law judge shall modify the support order to bring the support obligation into substantial compliance with the formula established under ORS 25.275, regardless of whether there has been a substantial change in circumstances since the support obligation was last established, modified or reviewed. * * *

"(g) The provisions of this subsection apply to any support obligation established by a support order under this chapter or ORS chapter 107, 108, 109, 110 or 416 or ORS 419B.400 or 419C.590."

[2] Legislative amendments to ORS 19.415 making *de novo* review discretionary in this type of case do not apply, because the notice of appeal in this case was filed before June 4, 2009. Or Laws 2009, ch 231, § 3.

arrears on child support for much of the time since the original dissolution judgment. Currently, father estimates that he is approximately $8,000 in arrears.

In the dissolution judgment, mother was awarded the family business, the "A Street Tavern," in Vale. The A Street Tavern sells food, wine, beer, liquor, and lottery tickets, and provides catering; the tavern business is mother's source of income. After the dissolution, over the years, father worked for his parents in their taverns, and, in 2005, he opened "Grady's Tavern," in Huntington, Oregon. Grady's sells food, wine, beer, liquor, and lottery tickets.

Father remarried in 2007. He and his current wife, Lillian, have four children, and Lillian has two children from a prior relationship. The family lives in a home that Lillian is purchasing. Father testified that, after they were married, he gave Lillian a half interest in Grady's Tavern; he therefore requested that the trial court attribute half of the profits of the business to Lillian. Both father and Lillian work at Grady's full time without a regular salary.

In May 2008, mother filed a request for administrative review of father's support obligation under the child support guidelines, ORS 25.275. In July 2008, based on uniform income statements submitted by both parties, the district attorney for Malheur County filed a motion to *reduce* father's child support obligation from $300 to $89 per month. ORS 25.287. Mother requested a hearing, ORS 25.287(1)(e), and an administrative law judge determined that there was insufficient evidence in the record to determine father's actual gross income. The ALJ therefore based father's support obligation on his "potential income" as determined under *former* OAR 137-050-0350.[3] Based on father's testimony concerning Grady's earnings and expenses, the ALJ determined that father's potential gross monthly income was $9,886, and that, effective July 18, 2008, father's monthly support obligation should be increased to $1,458.

---

[3] The relevant version of that rule provided that "potential income" is determined based on "[t]he parent's probable earnings level based on employment potential, recent work history and occupational qualifications in light of prevailing job opportunities and earnings levels in the community."

Father requested a *de novo* hearing in the circuit court. ORS 25.287(1)(e). At a trial, both parties submitted their 2008 federal income tax returns to establish their gross incomes. Mother's return shows sales at the A Street Tavern of $188,369. That amount includes lottery ($97,888) and non-lottery ($195,315) receipts, less cost of goods sold ($104,834). Mother's expenses in 2008 were $159,848, and she had an additional deduction of $2,210 for business use of her home, for an adjusted gross income of $26,311.

Father's 2008 federal income tax return showed total receipts at Grady's of $141,101 (lottery ($80,636) and nonlottery ($60,465)), less cost of goods sold of $73,964, for gross income of $67,137. Father's expenses were $49,869, for a net business income in 2008 of $17,268. In addition, father's return reported wages to Lillian of $1,805, and unemployment compensation of $2,925, for a total adjusted gross income of $21,998.

The record also includes father's 2007 tax return. That return shows lottery and nonlottery receipts of $136,742, less cost of goods sold of $50,107, for gross income of $86,635. Father listed business expenses of $94,859 in 2007, for a net loss of approximately $8,200. A carryover worksheet included with father's 2007 federal income tax return stated that father's adjusted gross income for 2006 was $24,000.

Father did not have any documentation to support the figures on his tax return. He testified that the accountant who prepared his return just used the numbers he wrote down. Father offered an explanation, however, for why the tavern's 2008 income from nonlottery receipts (food and beverage) was less than its cost of goods sold. He testified that 2008 was a bad year for business. He testified that the tavern gave away a lot of liquor promotionally and also sold it cheaply. In addition, he testified that two freezers had to be replaced in 2008, resulting in a lot of spoilage of food—and a higher cost of goods sold.

Mother testified about the financial side of running a tavern business. She testified that she is "somewhat" familiar with Grady's, and expressed surprise that father's total receipts, less cost of goods sold, could be less than his lottery

sales. She described to the trial court the principles of operating a tavern business and the method that she uses to determine what to charge for food and liquor in her own establishment. She explained that, although it is typical for a tavern to lose money in the first four to five years of business, the losses would not be as great as those listed by father. Based on her familiarity with father's business, mother estimated that father's nonlottery receipts in 2008 were probably around $136,000, rather than the $60,000 reported on the return.

The court found expressly that father was not credible. Specifically, the trial court did not believe that father would sell food and liquor for less than its cost:

> "I do not believe that [father] is telling the truth. It's simply not credible that he would—in a tavern business that he would, given the markup on alcohol and so forth, that he would be selling—that his sales would be less than the cost of goods sold."

Ultimately, relying on information derived from mother's evidence—in particular, the similarity of the two tavern businesses and mother's ratio for receipts to cost of goods sold—the trial court extrapolated a gross income figure for father of $92,896, or $7,741.33 per month, which happens to be consistent with the amount of income father reported on a 2007 credit application.[4] The court explained that it was simply adjusting father's tax return to reflect the same markup of cost of goods sold as that reflected in mother's tax return. In other words, the trial court believed that father had significantly understated his gross receipts from nonlottery sales, and the court increased that amount to reflect the same receipts to cost-of-goods-sold ratio in mother's return.[5] As

---

[4] On a March 2007 credit application to purchase a van, father listed monthly income of $7,000. He later claimed, however, that that amount was not correct.

[5] The trial court explained in the supplemental judgment:

"The Court, having received direct evidence of income, both from submitted exhibits and witness testimony, arrived at a method to calculate the income of the Petitioner for child support purposes. The Court found it necessary to derive this method to adjust the gross income shown on the Petitioner's schedule fee as the Court did not find the Petitioner's gross receipts reflected on his schedule fee from his 2008 income taxes to be a credible amount. The Court having heard the testimony of [mother], reviewed her tax records and finding the parties to own similar businesses each selling food, liquor and having

noted, based on that estimate, the circuit court increased father's monthly child support obligation to $1,319.

Father contends on appeal that the child support award is based on an estimate of income that is speculative and "that may be five times higher than father's actual income." *See Curran and Curran*, 100 Or App 330, 333, 786 P2d 205 (1990) (modifications are "properly based only on evidence of a party's present or future ascertainable ability to pay, not on speculative or uncertain future events"). He contends that the trial court should not have disbelieved the income reported on his 2008 federal tax return, which had been completed by an accountant.

As for specifics, father contends that the trial court's calculation is flawed in that the trial court (1) failed to consider father's testimony about the loss of two freezers and food spoilage that had an impact on cost of goods sold (for which there is no documentation); (2) failed to consider Lillian's half ownership of the tavern (for which there is no documentation); (3) failed to take into account mother's testimony that father sells his food and drink for 25 percent less than mother; and (4) disregarded mother's testimony that a tavern ordinarily loses money in the first five years. Finally, father points out that, even if one accepts the trial court's estimate of father's gross receipts, the business income reflected in his 2008 income tax return is comparable to that reported by mother. For the tax year 2008, mother reported gross receipts (lottery and nonlottery) of $293,203, and mother's adjusted gross business income for 2008 was $26,311. Viewed in that context, father contends, even in

_____

lottery, arrived at a factor to adjust [father's] reported gross receipts to reflect an amount consistent with the business records of [mother].

"The factor was derived by assuming the cost of goods sold and expenses reported on the parties' Schedule C to be correct. As [father's] cost of goods sold included the cost of supplies which is allowed pursuant to the tax laws and [mother] did not, the Court added $1,301.00 reflecting the cost of the supplies to the total of [mother's] cost of goods sold so that the numbers could be compared. The Court then subtracted the lottery total sales of $89,080.00 from [mother's] gross receipts to arrive at a total of $195,250.00. This number was then divided by the adjusted cost of goods sold to arrive at a ratio of 1.84. [Father's] cost of goods sold was then multiplied by the 1.84 to arrive at a gross sales figure of $136,093.00. The court then subtracted expenses to arrive at a net income of $92,896.00 including lottery which was divided by 12 to arrive at a monthly income available for child support of $7,741.33."

light of the trial court's estimate of gross receipts of $216,729 for father, a business income of $17,268 would appear to be reasonable.

In the event that this court, like the trial court, concludes that the information reported on father's 2008 return is not credible, father suggests various approaches that ultimately lead to roughly the same estimate of gross income. Father suggests that, if the court uses the cost of goods sold reported by father on his 2007 tax return ($50,107), a year in which there was no food spoilage, applying a ratio of 1.84, that change alone results in an adjusted gross income for purposes of child support of $41,000. In addition, father suggests, if this court applies to that cost of goods sold a ratio that takes into account mother's testimony that father sells food and drink for 25 percent less than mother, that results in adjusted gross business income of $25,951. Finally, father contends that at least a portion of the income earned at the tavern must be attributed to Lillian, who testified that she owns half of the business and worked long hours without pay.

Thus, the trial court's quandary has become ours. As the trial court found, the numbers reported by father for purposes of his 2008 federal taxes do not seem accurate. It is highly unlikely that father's cost of goods sold exceeded his income from the sale of those goods. The absence of any documentation or numbers makes it difficult to accept father's testimony about food losses due to freezer damage, and unlike in the administrative hearing, he offered no testimony concerning daily receipts. We agree with father, however, that in light of mother's testimony, the trial court's estimate of father's gross receipts based on a ratio identical to mother's is unsupported.

Because father is self-employed, *former* OAR 137-050-0350 (2000) provided the method for determining his actual income, and defined "gross income" as gross receipts "minus costs of good sold, minus ordinary and necessary expenses required for self-employment or business operation." ORS 25.290 provides that the child support obligor "has the burden of proof and must furnish documentation" to support any claimed offsets from gross receipts. The only documentation that father provided concerning his 2008 gross

receipts and cost of goods sold—his income tax return—lacks credibility. For that reason, we conclude that there is no basis in the record from which to determine husband's *actual* gross income, and it is appropriate to determine father's potential income under *former* OAR 137-050-0350. The trial court correctly considered the evidence in the record as a whole—including mother's testimony and tax returns—in determining father's potential gross income in a business similar to mother's. However, in light of mother's testimony that father's markup was 25 percent less than her own, or approximately 160 percent of cost, we find that father's gross receipts from nonlottery sales was approximately $118,342. Adding father's lottery receipts of $80,636 results in gross receipts of $198,978. Subtracting cost of goods sold of $73,964 and business expenses of $49,869 results in a net business income of approximately $75,145. We conclude that that is father's potential gross income. We therefore remand the case to the trial court for a recalculation of child support based on that income.

Judgment reversed and remanded for recalculation of child support.