Argued and submitted March 18, 2014, reversed and remanded
February 4, 2015

STATE OF OREGON
*Petitioner-Respondent,*

*v.*

Minh A. NGUYEN,
*Obligor-Appellant,*
*and*

Cam NGUYEN,
*Obligee-Respondent.*

Lane County Circuit Court
601207124; A153574

344 P3d 49

George W. Kelly argued the cause and filed the brief for appellant.

Denise G. Fjordbeck waived appearance for respondent State of Oregon.

No appearance for respondent Cam Nguyen.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Father appeals a judgment requiring him to pay child support, contending that the trial court erred in five ways in determining the appropriate amount of support. We agree that the trial court erred in determining father's income and in ordering a rebuttal based on father's access to funds of his ex-wife, and we therefore reverse and remand.

Father and mother have one child, who was born in February 2011. Father lives in Georgia, and mother and the child live in Oregon. In August 2011, the Oregon Department of Justice, Division of Child Support (DCS), initiated a filiation proceeding in which it was determined that father is the biological father of the child. At the conclusion of that proceeding, DCS issued a Notice and Finding of Financial Responsibility requiring father to pay $609 support per month, provide private health-care coverage when available or an additional $163 per month as cash medical support if it was not, and pay past support for the period February 1, 2011 to August 31, 2011, in the amount of $5,404. That notice was based on a child-support worksheet that identified father's monthly income as $5,251 and mother's monthly income as $1,473.33. The notice stated that father's income had been determined using "[p]resumed income for chicken ranchers/farmers in Georgia" and that mother's income had been determined based on "[p]otential minimum wage for Oregon."

Father requested a hearing, and DCS referred the matter to the Office of Administrative Hearings. An administrative law judge (ALJ) presided over a telephonic hearing in May 2012. Both parents participated and testified as witnesses. Father appeared *pro se*, and mother was represented by counsel and testified through an interpreter. DCS did not participate.

The ALJ made the following factual findings pertinent to this appeal:

"(1)  [The child], age one, is the child of [father] and [mother]. The child primarily resides with [mother]. There is no court order or written agreement that grants [father] parenting time with the child. [Father] does not exercise any parenting time with [the child].

"(2)   [Father] has two other biological children ***. [Father] resides in a barn on a chicken farm. His ex-wife Tina resides in the primary family home on the farm. The two children live in the primary home with Tina. There is no court order that requires [father] to pay ongoing support for [the two other children].

"(3)   [Mother] is employed in a nail salon, working nine hour shifts, six to seven days per week. She earns commissions only in the approximate amount of $1,500 per month. She has worked for this employer for two years.

"(4)   [Father] is employed in a nail salon, working eight hour shifts, six days per week. He earns commissions only of $350 to $500 every two weeks. He began this job in December 2011.

"(5)   In Oregon, the 10th percentile wage for manicurists is $8.98 per hour. In Georgia, the 10th percentile wage for manicurists is $8.60 per hour. [Mother] resides in Oregon. [Father] resides in Georgia.

"(6)   From August 2010 through September 2011, [father] operated a Georgia chicken farm in which he was part owner. During that period, he was the sole operator of the farm and received all the income and incurred all the expenses related to the farm. He worked all day on the farm, seven days per week. In September 2011, he assigned any interest he had in the chicken farm to the co-owners, his ex-wife Tina and his ex-sister-in-law, for $2. He no longer had any capital to invest in the chicken farm and could not continue to operate it. He had a capital loss of $21,084 for this transaction. In 2011, he had gross receipts from the farm of $153,578 and gross business expenses of $121,547. ***. Prior to operating the chicken farm, [father] performed computer repair work in Oregon, earning $15 per hour.

"(7)   The State of Oregon's minimum wage is $8.80 per hour, and the State of Georgia's minimum wage is $7.25 per hour.

"(8)   Neither [father] nor [mother] has access to private health care coverage.

"(9)   On February 19, 2011, DCS received a mandatory referral to establish support for [the child]. In March 2011, [father] began making regular monthly payments to [mother]. From March 2011 through September 2011,

he made the following payments: $300, $200, $450, $300, $200, $350, $100, and $400. He made no other payments after September 2011. Four months prior to the birth of [the child], [mother] visited [father] in Georgia."

(Footnotes omitted.)

Based on those factual findings, the ALJ ordered father to pay $277 monthly cash support and $0 monthly cash medical support to mother. That calculation was based on father's income of $1,490.67 and mother's income of $1,556.53. Those numbers represent parents' potential incomes, based on the 10th percentile wage for manicurists in Georgia, for father, and in Oregon, for mother. The ALJ assigned those potential incomes after finding that both parents made less than Oregon minimum wage. *See* OAR 137-050-0715(6) (7/1/10) ("Income is presumed to be the amount determined as potential income in the following scenarios: * * * (c) A parent with income less than Oregon minimum wage for full-time employment."). The ALJ also found that father owed past support of $5,193 for the period of February 2011 through June 2012. The ALJ calculated that past-due amount based on the actual monthly income that it determined father made from the chicken farm that he owned and operated from February through September 2011, which the ALJ determined to be $4,315.67, and his potential income of $1,490.67 as a manicurist thereafter.

Father requested a hearing *de novo* in Lane County Circuit court by filing a form entitled "Appeal From Administrative Order & Petition For Hearing *De Novo*." *See* ORS 416.427(6) ("Appeal of the order of the administrative law judge * * * may be taken to the circuit court of the county in which the order has been entered pursuant to ORS 416.440 for a hearing *de novo*."). In printed text, the form stated, "I request a hearing to appeal all or part of the administrative order as follows[.]" In the space after that text, father wrote, "The amount of past child support and my income from nail salon."

The hearing *de novo* occurred in November 2012. Father participated in the hearing by telephone, and both he and mother testified through an interpreter. Neither parent was represented by counsel. DCS appeared through

counsel. At the start of the hearing, the attorney for DCS explained that "the main issue that [father] objects to is how the administrative law judge computed his income and his obligations for past support." DCS's attorney also noted that "the State believes [father] is partially right, that the ALJ might have overstated his income."

As we will explain in more detail below as we discuss each of father's assignments of error, the trial court found that father's current actual income as a manicurist in Georgia was $1,750 per month. It found that father's income during the time when he owned the chicken farm—as relevant here, from February 2011, when the child was born, until September 2011, when father stopped working on the farm—was $2,750 per month. The court adhered to the ALJ's finding that mother's income as a manicurist in Oregon was less than minimum wage, and it adopted the ALJ's determination that mother's potential income was $1,556 per month. Unlike the ALJ, who disbelieved mother's testimony regarding her childcare costs, the court found that mother had childcare costs of $700 per month. Finally, the court applied a rebuttal of $150 to father's income based on its findings regarding two rebuttal factors: (1) the court's finding that mother paid approximately $150 per month in uninsured medical expenses for the child and (2) its finding that father had access to additional financial resources from his ex-wife.

Based on those findings, the trial court entered a judgment requiring father to pay $765 per month plus $49 cash medical support effective November 1, 2012. The trial court calculated past support from February through September 2011 at $1,180 plus $116 cash medical support per month. Father received a credit for $2,300 that he had paid, for a total past due for that period of $8,068. From October 2011 through October 2012, father was ordered to pay $765 plus $49 cash medical support per month, for an additional past due amount of $8,140.

Father appeals, raising five assignments of error. We address the assignments of error in turn and describe the relevant testimony and rulings as we discuss each. Father requests that we review the first four assignments

of error *de novo*. We do not view this as an "exceptional" case of the kind that merits such review; accordingly, we decline father's request. ORS 19.415(3)(b); ORAP 5.40(8)(c). Accordingly, "we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record." *Andersen and Andersen*, 258 Or App 568, 570, 310 P3d 1171 (2013) (internal quotation marks omitted); *see also Gilmore and Ambrose*, 258 Or App 747, 748, 311 P3d 970 (2013) (when we do not review *de novo* in a child support case, "we review the trial court's decision for legal error and state the facts consistently with those found by the trial court to the extent that there is evidence to support them" (internal quotation marks omitted)).

Father first assigns error to the trial court's determination that his farm income was $2,750 per month from February to September 2011. At the hearing, father conceded that his federal income tax return for 2011 reflected that amount of income (a total of $33,000 for the year). Father testified, however, that the income belonged not only to father, but also to two other people who co-owned the farm. Accordingly, he contended, only one-third of that income was attributable to him. On appeal, father renews that contention.

The trial court did not err in finding that father's income tax return correctly stated his farm income; the court was entitled to disbelieve father's testimony to the contrary. Father faults the trial court, which questioned mother and father itself, for failing to delve deeply enough into father's contention that the farm income should be divided by three. Accordingly, he contends, we should reverse on the ground that the court's questioning of father did not develop an adequate record. In father's view, if the court had questioned him further, it might have learned that father's payments to the other owners of the farm should have been excluded from his income. We decline to reverse on that speculative basis and we therefore reject father's first assignment of error.

Next, father assigns error to the trial court's finding that his income as a manicurist is $1,750 per month. Father testified that he made $700 or $800 per month performing pedicures at a salon in Georgia and less than $100

per month in tips because people in Georgia did not tip well. Father did not testify to the number of hours he worked.

Mother testified that she believed that father made more than that. First she contended that father was able to perform manicures as well as pedicures; she had seen him perform manicures several years before, when, she asserted, he had owned a nail salon in Lake Oswego. Then mother explained that two of the paychecks that father had submitted to document his income appeared to cover overlapping time periods and that the checks were signed by father's ex-wife, whose sister owned the salon where father worked. Mother testified that she was "convinced" that father's ex-wife had written the checks to father in an attempt to make it look like father was earning less than he actually was. Then mother testified that father's "real income for a manicurist would be $1,500 a month," because mother made that much as a manicurist working only three or four days per week. She agreed with father's testimony that manicurists are paid entirely on commission, with 60% of the customer's payment going to the manicurist and 40% going to the salon. She later added that she also made $200 to $300 per month in tips.

The trial court found that father's testimony about his income was not credible and, based on mother's testimony, found that father's income was $1,750 per month. Father contends that the court's finding was "based entirely on speculation." We agree that that finding is not supported by the evidence. Although the "any evidence" standard is a low one, *State v. S. T. S.*, 236 Or App 646, 655, 238 P3d 53 (2010), it nevertheless requires the evidence in the record to be sufficient to allow a reasonable inference in favor of the court's finding. *See, e.g., Dept. of Human Services v. H. H.*, 266 Or App 196, 204, 337 P3d 929 (2014) (expert testimony that a child's injury was caused by abuse and circumstantial evidence suggesting that the father had abused the child "permit the reasonable inference that [the] father caused [the child's] injuries through abuse," meeting the "any evidence" standard).

In *Andersen*, 258 Or App at 584-85, we explained that, for purposes of both spousal support and child support,

the record evidence of the husband's past earnings was legally insufficient—it did not meet the "any evidence standard—to prove the husband's present potential income. The trial court had found that the husband's potential income was $8,000 per month. In light of the uncontroverted circumstance of "the downturn in the construction and legal services industries," the facts that the husband had earned that much in the past and was a "reputable lawyer" did not prove that the husband was *presently* able to earn that much. *Id.* at 584. In other words, the evidence in the record—evidence of the husband's earnings before the economic downturn—did not support the conclusion that the trial court inferred from that evidence, namely, that the husband could still earn that much.

Likewise, here, mother's testimony about her earnings as a manicurist in Oregon do not support the conclusion that father earned the same amount as a manicurist in Georgia. The record includes neither general information comparing nail salons in Oregon to those in Georgia nor any specific information comparing the salon where mother worked with the salon where father worked. *Cf. Mathews and Mathews*, 242 Or App 225, 230, 232-33, 255 P3d 607 (2011) (on *de novo* review, relying in part on the mother's testimony about "the principles of operating a tavern business and the method that she uses to determine what to charge for food and liquor in her own [Oregon tavern]," as well as her familiarity with the father's tavern, which was also in Oregon, to determine the father's potential income from his tavern). The record also contains no information about the price of nail services in Oregon and Georgia, how busy the two salons were relative to each other, or even how many hours father worked. In sum, the court was entitled to disbelieve father's account of how much he earned, but, on this record, it could not reasonably infer that father's earnings were the same as mother's. Accordingly, we must reverse and remand for redetermination of father's income.

In his third assignment of error, father contends that the court erred in finding mother's income to be less than minimum wage and, accordingly, using her potential monthly income ($1,556) rather than her actual income of $1,700 or $1,800 to calculate child support. Father points

out that mother testified that she works three or four days a week and earns $1,500 plus $200 to $300 in tips per month. Thus, the only evidence in the record indicates that mother makes at least $1,700 or $1,800 per month, more than minimum wage.[1]

Father's argument that the trial court erred in using mother's potential income rather than her actual income is not preserved for our review. In his petition for review of the ALJ's order, father stated that he contested the ALJ's calculation of the nail salon income and the back support amount. He did not raise any issue regarding mother's income, either in the petition for review or at the hearing, so we do not address that issue further. However, father's failure to preserve the claim of error for appeal does not leave him without any avenue for relief. Because we are remanding this case for other reasons, and because that remand will result in a recalculation of father's support obligation, the trial court will have an opportunity on remand to revisit its determination of mother's income and to correct any associated error.

In his fourth assignment of error, father challenges the $150 rebuttal that the trial court imposed after determining the presumed support amount. The court found that the presumed support amount was unjust or inappropriate pursuant to OAR 137-050-0760 (7/1/10), which provides: "The presumed support amount may be rebutted by a finding that sets out the presumed amount, concludes that this amount is unjust or inappropriate, and states the reason the presumed amount is unjust or inappropriate." *See also* ORS 25.280 ("[T]he amount of support determined by the [child support formula contained in the guidelines] is presumed to be the correct amount of the obligation. This is a rebuttable presumption and a written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case is sufficient to rebut the presumption."). The court ordered a rebuttal

---

[1] We say that mother has "at least" that amount of income because she testified, without contradiction, that her sisters give her $600 each month to help with expenses. The trial court did not account for that income in its support calculation.

of $150, citing two factors: first, the child's need for treatment for her asthma, which results in uninsured medical expenses, and second, the availability to father of additional resources from his ex-wife. *See* OAR 137-050-0760(1)(a), (o) (7/1/10) (rebuttal factors to the presumed support amount include "[e]vidence of the other available resources of the parent" and "[t]he extraordinary or diminished needs of the child"). Father argues that the evidence does not support the court's finding that he has access to additional resources from his ex-wife.

As stated above, we review the trial court's decision for legal error and the facts for any evidence. *Gilmore,* 258 Or App at 748. When a court's determination that the presumed support amount is unjust or inappropriate stems from an error in its application of the rebuttal factors, we must remand for reconsideration. *See Larkin and Larkin,* 146 Or App 310, 312-15, 932 P2d 115 (1997) (remanding where the trial court had applied improper rebuttal factors and failed to make a specific finding that the presumed support amount was unjust or inappropriate); *see also Cain and Gilbert,* 196 Or App 28, 31-34, 100 P3d 735 (2004) (remanding where the court had failed to find the presumed amount of child support before evaluating the rebuttal factors; addressing the application of the rebuttal factors as likely to arise on remand).

Here, as we explain below, the trial court based its rebuttal determination in part on a finding that father had additional resources available from his ex-wife. That finding rests, in turn, on two factual findings that are not supported by the record. Accordingly, on remand, the trial court must reconsider whether additional resources were available to father from his ex-wife. If the court finds that additional resources were not available, it must reconsider whether rebuttal is appropriate and its amount.

In addition to mother's testimony about the overlapping time periods of father's paychecks and her belief that father's ex-wife had written the checks to father to make it appear that his income was less than it really was, the relevant testimony was as follows: Mother testified that she believed that father was living with his ex-wife. DCS's

attorney asked mother if it was her "belief that [father] can obtain money whenever he needs it from his ex-wife," and mother agreed that she believed that. Mother did not explain why she believed those things. Father testified that he paid $200 per month in rent; mother did not testify about father's rent. The court found:

> "I'm—the testimony is really unclear, but there was a lot of money invested in this chicken farm which conveniently is owned by the same person who owns the nail salon and—with some irony, I say—is the same person who is signing the checks that were submitted to the mother of this child, which tells me that there is money available.

> "[Father] lives rent-free, doesn't pay support for his other children, and has the ability to work. * * *

> "In terms of the rebuttal factors, again, two of them. One of them is the special needs of the child. Mother has to output funds in the amount of approximately 150 a month towards the medical care of this little girl as well as the availability of funds from other—or resources that [father] has from his ex-wife, which isn't necessarily family but is family because she's the mother of his other children and his employer and his landlord."

In the judgment, the court found that "[f]ather's ex-wife provides him with additional funds as needed, beyond his earnings at the salon."

The record includes no evidence supporting two of the factual premises that underlie the court's finding that father's ex-wife provides father with additional funds as needed. First, the court's oral finding indicates that checks that father sent to mother for child support were signed by father's ex-wife. The court appears to have relied on that fact to determine that "there is money available" to father from his ex-wife. But the record does not include evidence that father's ex-wife had signed father's child-support checks or had otherwise paid his child-support obligation to mother. Rather, the checks discussed in the record are paychecks, signed by father's ex-wife, that father submitted to DCS to prove his *income*, not his payment of a support obligation. In mother's opinion, those checks reflected less than father was actually earning at the salon. That evidence does not

support the trial court's finding that father's ex-wife paid father's obligations to mother or otherwise show that father's ex-wife provided father with funds as needed in addition to his earnings at the salon.

Second, the record does not support the court's finding that father lives rent free. The only evidence of father's rent was his testimony that he paid $200 per month in rent. Even if mother's unelaborated testimony that she believed that father was living with his ex-wife allowed a finding that father was living with his ex-wife, that testimony says nothing about whether father paid rent as part of that living arrangement. Accordingly, the record does not support the court's finding that father had access to additional resources from his ex-wife on the ground that he lived with her without paying rent.

In sum, the evidence does not support two of the factual findings on which the court relied in determining that father had access to additional resources through his ex-wife. Accordingly, on remand, the trial court must reconsider whether additional resources were available to father from his ex-wife. If it finds that additional resources were not available, it must reconsider whether the presumed support amount is unjust or inappropriate and, if it is, must reconsider the amount of rebuttal in light of the evidence in the record.

Finally, father contends that the trial court erred in "denying father any opportunity to cross-examine mother." Father does not contend that the claim of error was preserved; rather, he argues that the error is apparent on the face of the record and, therefore, that we should reverse and remand for a new hearing.

We disagree that the trial court denied father an opportunity to cross-examine mother. Nothing in the record reflects that the court prevented father from cross-examining mother or, in a practical sense, interfered with his ability to do so. Rather, after mother testified, the court asked father if he had any questions about exhibits that mother had submitted. Father responded with several assertions about the truth of parts of mother's testimony unrelated to the exhibits. Father's response suggests two

things: First, the breadth of father's response to the question suggests that father considered the court's question to be an invitation to challenge mother's testimony, not just to talk about the exhibits. Second, the phrasing of father's assertions suggests that father was not prepared to challenge mother's testimony in the form of cross-examination. That is, although the court had invited father to ask questions, father apparently preferred to testify himself.

The record also suggests that the court would have allowed father to question mother if he had asked to. During mother's testimony, mother requested to ask father a question. The court said, "[y]es," and mother questioned father about the signature on the paychecks he had submitted to prove his income. If father had similarly wanted to ask mother about any part of her testimony, there is no reason to think that the trial court would not have allowed him to do so. However, as noted above, the record suggests that father did not have questions that he wanted mother to answer. Thus, the trial court did not deny father an opportunity to cross-examine mother, as he contends.

Reversed and remanded.