Argued and submitted October 26, 2021; general judgment reversed and remanded for reconsideration of child support award, otherwise affirmed September 14, 2022

Emanuel Jesus GARCIA-ASCENCIO,
*Petitioner-Respondent,*

*v.*

Melissa GONZALEZ,
*Respondent-Appellant.*

Marion County Circuit Court
20DR02506; A175198

517 P3d 332

Mother appeals from a judgment that requires father to pay child support at less than half the presumptive amount under the Oregon Child Support Guidelines (guidelines). Mother argues that the trial court erred when it departed from the guidelines without finding that the presumptively correct obligation was "unjust or inappropriate," using several improper rebuttal factors, and making findings that were not supported by the record. *Held*: The trial court erred in its child support award by deviating from the guidelines without making the necessary findings and relying on inappropriate rebuttal factors, including mother's receipt of public benefits.

General judgment reversed and remanded for reconsideration of child support award; otherwise affirmed.

Thomas M. Hart, Judge.

Rachael A. Federico argued the cause for appellant. Also on the brief were Kyle Johnson and Legal Aid Services of Oregon.

No appearance for respondent.

Before Mooney, Presiding Judge, and Kamins, Judge, and Pagán, Judge.*

MOONEY, P. J.

General judgment reversed and remanded for reconsideration of child support award; otherwise affirmed.

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

Mother appeals a judgment that, among other things, requires father to pay child support at less than half the presumptive amount under the Oregon Child Support Guidelines (guidelines). She contends that the trial court erred when it awarded child support in the amount of $300. Specifically, she contends that the court erred when it (1) departed from the guidelines calculation without properly finding the guidelines obligation to be "unjust or inappropriate"; (2) used mother's receipt of public assistance benefits including food stamps and enrollment in the Oregon Health Plan (OHP) as rebuttal factors; and (3) made findings that were not supported by evidence in the record. We agree that the trial court erred in its child support award and, therefore, we reverse and remand for reconsideration of that award.

## I.   STANDARD OF REVIEW

The parties did not request, and we decline to conduct, *de novo* review. We review the court's determination of father's child support obligation under the guidelines for errors of law. *Partsafas and Partsafas*, 314 Or App 637, 641, 499 P3d 117 (2021). We "state the facts consistently with those found by the trial court to the extent that there is evidence to support them." *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012).

## II.   HISTORICAL AND PROCEDURAL FACTS

The parties have four joint children. Father initiated this case when he filed a petition seeking, among other things, sole custody of the parties' children and requesting that mother be ordered to pay him child support calculated under the guidelines. The parties eventually agreed that mother would be awarded sole legal custody of the children subject to parenting time for father, which includes 106 overnights with the children per year. The trial court conducted a hearing and resolved the remaining disputed issues, including child support, which is the sole issue on appeal.

Mother's Child Support Worksheet, admitted into evidence by the court, calculated father's presumptive

monthly child support obligation to be $614. Father did not dispute that guidelines-based calculation. Instead, father argued that if he were ordered to pay the amount from the calculation, he would not have sufficient funds left for his own personal expenses or for those of the children when they were in his care. The trial court made findings about gross income, childcare expenses, and health insurance consistent with the information that mother provided in her child support worksheet—undisputed findings that would have supported a monthly child support obligation running from father to mother for the benefit of their children in the amount of $614.

The court *sua sponte* questioned mother about whether she received public assistance for the children, and she responded that she received food stamps with the approximate value of $500 each month through the Supplemental Nutrition Assistance Program (SNAP) and approximately $600 each month in an unspecified housing allowance. She also testified, in response to questions from the court, that she and the children received health insurance through OHP. The court found that mother benefited from "having family" because her sister provided childcare services while mother worked, which resulted in "recycl[ing] childcare] money," that she benefited from public assistance (*i.e.*, OHP, SNAP/food stamps, and housing assistance), and that mother's ability to claim the children as dependents on her tax returns, all worked to father's "detriment." The court thus concluded that the guidelines amount was "excessive"; it deviated from the guidelines calculation and ordered father to make monthly child support payments of $300.

## III.    OREGON CHILD SUPPORT GUIDELINES

ORS 25.270 (legislative findings) through ORS 25.280 (formula amount presumed correct) require that child support be determined according to a formula. That formula, set forth in OAR chapter 137, division 50, is income-based and provides a scale of basic support obligations with an online calculator and worksheet to assist with the calculation. OAR 137-050-0710; OAR 137-050-0725. The formula thus provides a uniform approach to dividing the parents' shared obligation to support their children and yields a

presumptively correct level of child support. The formula does, however, allow the presumed support amount to be

> "rebutted by a specific finding on the record that the application of the formula would be unjust or inappropriate in the particular case as determined under criteria established by the state."

ORS 25.270(2). Reasons for rebuttal are provided in ORS 25.280[1] and OAR 137-050-0760(1),[2] but neither list is

---

[1] ORS 25.280 provides, in relevant part:

"The following criteria shall be considered in making the finding [that application of the formula would be unjust or inappropriate in a particular case]:

"(1) Evidence of the other available resources of a parent;

"(2) The reasonable necessities of a parent;

"(3) The net income of a parent remaining after withholdings required by law or as a condition of employment;

"(4) A parent's ability to borrow;

"(5) The number and needs of other dependents of a parent;

"(6) The special hardships of a parent including, but not limited to, any medical circumstances of a parent affecting the parent's ability to pay child support;

"(7) The needs of the child;

"(8) The desirability of the custodial parent remaining in the home as a full-time parent and homemaker;

"(9) The tax consequences, if any, to both parents resulting from spousal support awarded and determination of which parent will name the child as a dependent; and

"(10) The financial advantage afforded a parent's household by the income of a spouse or another person with whom the parent lives in a relationship similar to that of a spouse."

[2] OAR 137-050-0760(1) provides:

"The presumption that the guideline support amount as provided in OAR 137-050-0700 through OAR 137-050-0755 is the correct support amount may be rebutted by a finding that sets out the presumed amount, concludes that it is unjust or inappropriate, and sets forth a different amount and a reason it should be ordered. The criteria that may be the basis for rebuttal include but are not limited to:

"(a) Evidence of the other available resources of the parent;

"(b) The reasonable necessities of the parent;

"(c) The net income of the parent remaining after withholding required by law or as a condition of employment;

"(d) A parent's ability to borrow;

"(e) The number and needs of other dependents of a parent;

"(f) The special hardships of a parent affecting the parent's ability to pay support, including, but not limited to, any medical circumstances,

exclusive. Ultimately the court must calculate the child support amount using the guidelines formula for "the child[ren]'s benefit and not the parents' benefit." ORS 107.106(1)(b).

## IV.   PRESERVATION

Preliminarily, we review whether mother preserved her argument that the record did not support a deviation from the presumed child support obligation under the guidelines-based calculation. Mother relies on her trial

---

extraordinary travel costs related to the exercise of parenting time, or requirements of a reunification plan if the child is in state-financed care;

"(g) The desirability of the custodial parent remaining in the home as a full-time parent or working less than full-time to fulfill the role of parent and homemaker;

"(h) The tax consequences, if any, to both parents resulting from spousal support awarded, the determination of which parent will name the child as a dependent, child tax credits, or the earned income tax credit received by either parent;

"(i) The financial advantage afforded a parent's household by the income of a spouse or domestic partner;

"(j) The financial advantage afforded a parent's household by benefits of employment including, but not limited to, those provided by a family owned corporation or self-employment, such as housing, food, clothing, health benefits and the like, but only if unable to include those benefits as income under OAR 137-050-0715;

"(k) Evidence that a child who is subject to the support order is not living with either parent;

"(L) Findings in a judgment, order, decree or settlement agreement that the existing support award is or was made in consideration of other property, debt or financial awards, and those findings remain relevant;

"(m) The net income of the parent remaining after payment of mutually incurred financial obligations;

"(n) The tax advantage or adverse tax effect of a parent's income or benefits;

"(o) The extraordinary or diminished needs of the child, except:

"(A) Expenses for extracurricular activities and

"(B) Social Security benefits paid to a child because of a child's disability;

"(p) The return of capital.

"(q) The financial costs of supporting a Child Attending School at school, including room, board, tuition and fees, and discretionary expenses, the ability of the Child Attending School to meet those expenses with scholarships, grants and loans, and the ability of a parent to provide support for the Child Attending School, either in kind where a child continues to live in a parent's home or with cash if there are parental resources to provide financial support over and above the amount for a Child Attending School generated by the child support calculator."

memorandum from November 25, 2020, as proof of preservation, implicitly acknowledging that she did not object to the trial court's findings during the hearing. In her trial memorandum, submitted prior to the hearing, mother argued that:

> "Regarding child support, both parties pleaded for a child support calculation according to Oregon's Uniform Child Support Guidelines (Guidelines, hereafter). The total monthly Guidelines support amount for Father to pay Mother is $614.00. Exhibit 102. Father will not, however, stipulate to paying the presumed amount because, he says he 'need[s] money to live.' Father has not produced any probative evidence to rebut his monthly income of $2,173.00 or any evidence that he has any special hardships affecting his ability to pay support. ORS 25.280. (Guidelines amount presumed correct); *Redler and Redler*, 330 Or 51, 60[, 996 P2d 963] (2000) (party seeking to rebut the presumption in ORS 25.280 has the burden of providing probative evidence that would support a finding that it would be unjust or inappropriate to follow the Guidelines). Of Father's $2,173.00 monthly income, Father has $932.00 available for supporting the children—allowing for Father to keep $1,241 in self-support reserve—according to the Guidelines. Exhibit 102. Accordingly, $614 per month is just and appropriate."

"[T]he preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009). Preservation ensures that the trial court had a "chance to consider and rule on" the argument now being made, perhaps avoiding the need for an appeal altogether. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Preservation "ensures fairness to opposing parties" by avoiding surprise, *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011), and it "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Peeples*, 345 Or at 219-20. A party's failure to cite specific authority to support its argument or to reiterate an argument in a hearing that was otherwise raised in a written motion does not, however, necessarily mean that the

argument is unpreserved. *Walker*, 350 Or at 549-50; *State v. Mejia*, 287 Or App 17, 22, 401 P3d 1222 (2017) (holding that we have consistently concluded that "an issue is preserved for our review if it is presented clearly in a written motion, notwithstanding a party's failure to reiterate all of its arguments at a subsequent hearing").

Mother's trial memorandum served the policies underlying preservation. In her memorandum, she argued that father had the means to pay the guidelines-calculated child support obligation and that any deviation from that presumptively correct amount due to father's financial needs would be father's burden to prove. Mother raises the same substantive argument on appeal. It should not have been a surprise to anyone that mother was seeking the guidelines-calculated amount of support. That is what father sought in child support from mother when he filed the petition in this case seeking custody of the children. Given that the parties agreed that mother would be awarded custody instead of father, it was reasonable to expect that she would then seek the same guidelines-calculated child support from father. It is true that mother did not make an oral objection to the trial court's *sua sponte* inquiry about SNAP, housing assistance, and OHP, or to the court's findings made during the hearing, but that was not required. Mother presented her straightforward argument about child support and clearly addressed father's anticipated argument that he should pay less than the presumptively correct amount, in her written trial memorandum. *See Mejia*, 287 Or App at 22. Any surprise to father would have been shared by mother and was created by the trial court's questions to mother about specific matters it used as the basis for deviating from the guidelines calculation. The trial court had the opportunity to consider and rule on mother's contention that the guidelines amount was appropriate, and that father was able to pay that amount.

The policies underlying preservation were served, and mother's argument was preserved.

## V.  ANALYSIS

We now turn to the merits.

A.  *No Finding That Presumed Support Amount was "Unjust or Inappropriate"*

The first question is whether the trial court erred when it failed to find that the guidelines support amount was "unjust or inappropriate." ORS 25.270(2). The court found that the presumptive amount was "excessive," but it did not find—either orally on the record or in writing—that the presumptive amount was unjust or inappropriate. Such a finding was necessary before the court was authorized to apply rebuttal factors and deviate from the guidelines amount. *St. Sauver and St. Sauver*, 196 Or App 175, 184, 100 P3d 1076 (2004). Although that failure alone requires remand, we will nevertheless "address whether the rebuttal factors cited by the court in its original child support decision are appropriate rebuttal factors because that issue is likely to arise on remand." *Cain and Gilbert*, 196 Or App 28, 32, 100 P3d 735 (2004).

B.  *Rebuttal Factors*

As we turn to our review of the rebuttal factors relied on by the court, we note that father did not, and does not, dispute the accuracy of the amount of income the court attributed to him and to mother—nearly identical numbers ($2,000 for father and $1,906 for mother), and that the presumptively correct amount of monthly support was, in the end, $614. As we understand it, father's argument to the trial court was that the correctly calculated support obligation simply did not leave him with sufficient funds to meet his own basic needs as well as his children's needs when they were in his care.

The court, in the context of that argument, deviated from the presumed support obligation by more than 50 percent when it set father's monthly obligation at $300. As previously mentioned, it found that mother had "the benefit of having family," was "recycl[ing childcare] money," and that she had the benefit of OHP, housing assistance,[3] and SNAP.

---

[3] The record contains no evidence about the type, nature, or purpose of the housing allowance mother mentioned in response to the court's question about public assistance, and she does not develop an argument concerning how such allowances may or may not factor into calculating child support. We, therefore, express no opinion on that topic.

The court also found that those benefits were a "detriment" to father, and it suggested that mother's goal in seeking more overnights with the children was motivated by her own financial interest and not by concern for the children's best interest.[4]

### 1. *Oregon Health Plan coverage*

It was error for the court to use the fact that mother enrolled the children in OHP to provide health insurance coverage for them as a rebuttal factor to reduce father's support obligation. The trial court found that enrollment in OHP was a "benefit" to mother. Of course, health insurance is beneficial for the children and, therefore, it is beneficial for both parents as well. To the extent that one parent incurs the cost of providing health insurance, that parent's cost is factored into the calculation of the presumed support amount by the guidelines formula itself. Any such costs are specifically accounted for, and the presumed support obligation is adjusted accordingly. OAR 137-050-0750. Here, the "reasonable cost" of providing health insurance for the

---

[4] The court had this exchange with father at the end of the hearing:

"FATHER: Um, you know, before I do leave, I do have a question for Mrs. Gonzalez. I know 'cause when we first started trying to come up with a child … [inaudible] plan, the plan was to have them one week, one week off, so we could have them kind of joint custody, you know, 50%, and all the sudden she disagreed; I'm not sure why she did that. I was wondering what the issue was. I was understanding … yeah, I really don't understand why she, she, she switched her mind up on that.

"JUDGE: I know exactly why she did; she started talking to her lawyer and it was to her advantage to not be doing that, but I'm not going to get into that, okay? Remember, we had that conversation a long time ago.

"FATHER: Oh, okay.

"JUDGE: Alright.

"FATHER: I, I just wanted more time with my children, you know, I'm not trying to take anything away from anybody.

"JUDGE: I get that part of it. Under the law, the more she has 'em, the more money she's entitled to.

"FATHER: Oh, okay.

"JUDGE: And that's what any lawyer worth their salt would be advising their client, okay?

"FATHER: Oh, so they're not looking out for the children's benefit?

"JUDGE: There's some of that, yeah, you know, it, it …"

After that the court trailed off, leaving the thought incomplete.

children was noted on the guidelines worksheet in evidence to be $0 for each parent. Because the presumptive support amount was calculated considering the absence of insurance costs for both parents, it was error for the trial court to then use mother's enrollment of the children in OHP as a rebuttal factor.

2.   *SNAP/food stamps*

SNAP/food stamps received on behalf of children are explicitly exempted from a parent's "actual income." *See* OAR-137-050-0715(2).[5] Further, the presumptive child support amount is calculated based upon an income-based formula that intentionally excludes a parent's receipt of "food stamps." *See* OAR 137-050-0715(5) (excluding, among other things, "[c]hild support, food stamps, Social Security or Veterans benefits received on behalf of a child in the household"). Moreover, any factor used in the support calculation to determine the amount of support at the front end cannot also be applied as a rebuttal factor at the back end. *See Larkin and Larkin*, 146 Or App 310, 313, 932 P2d 115 (1997) (explaining that because the relative incomes of the parents is a "key component" in computing support, income disparity cannot also be used as a rebuttal factor).

Here, the trial court used mother's receipt of food stamps through SNAP as a rebuttal factor, finding that the food stamps were to mother's "benefit." But it erred when it considered mother's receipt of food stamps on behalf of the children as a "benefit" to her *as if it were income* available for support and using it to rebut the amount of father's presumed child support obligation. The presumptive support amount is calculated according to an income-based formula that specifically excludes from the parents' income food stamps "received on behalf of" the children. OAR 137-050-0715(5). Given that, the trial court was not authorized to use the receipt of food stamps for the children as it did here—as a rebuttal factor at the back end of the calculation.

---

[5] *See* OAR-137-050-0715(2) ("'Actual income' means a parent's gross earnings and income from any source, including those sources listed in section (4), except as provided in section (5).").

### 3. *Childcare costs*

Mother testified that the parties' oldest child was unable to assist with childcare while mother was at work and that mother, therefore, arranged for her sister (the children's aunt) to provide those needed childcare services in exchange for $240 each month. That was the extent of mother's testimony about childcare costs. The trial court later found that mother, in fact, paid her sister $240 a month for childcare services, and also that mother benefitted from the "recycl[ing]" of those childcare payments. The court then applied the "recycle[d]" payments as a rebuttal factor. There is no evidence in the record to permit a reasonable inference of "recycl[ing]" or even any evidence about what that means. Findings must be supported by "any evidence," which is a low standard, but "requires the evidence in the record to be sufficient to allow a reasonable inference in favor of the court's finding." *State v. Nguyen*, 268 Or App 789, 795, 344 P3d 49 (2015). The trial court erred when it found that mother "recycle[d]" childcare costs because there is no evidence in the record to support that finding. Applying that finding as a rebuttal factor was likewise error.

### 4. *Ability to claim children as tax dependents*

The trial court is authorized to use "[t]he tax consequences, if any, to both parents resulting from *** the determination of which parent will name the child as a dependent," as a basis for rebuttal. OAR 137-050-0760(1)(h). However, when "the parent with primary physical custody of the child will receive the dependency exemption[] *** no further consideration need be given to this issue." OAR 137-050-0760(1)(h) Commentary (2019). Here, mother was awarded sole legal custody of the children, and she had "primary physical custody" as well. *See* OAR 137-050-0730(1)(a) (defining term for purposes of child support guidelines). She was also awarded the right to claim the children as dependents on her tax returns. It was, therefore, error for the court to consider any "tax consequences" of that award as the basis for rebutting the guideline child support amount.

General judgment reversed and remanded for reconsideration of child support award; otherwise affirmed.